IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHERYL POOLE, et al.,

        Plaintiffs,

v.                                     CIVIL ACTION NO.  2:12-cv-01978

ETHICON, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the Plaintiffs' Motion to Reconsider Plaintiffs' Motion to Remand [Dockets 21, 35] and Motion for Leave to File Plaintiffs' Second Amended Complaint [Dockets 22, 36]. Defendant Ethicon, Inc. ("Ethicon") responded to the motions, the plaintiffs have replied, and the motions are ripe for review.[1] For the reasons discussed below, the plaintiffs' motion to reconsider [Dockets 21, 35] is **DENIED** and motion for leave to amend [Dockets 22, 36] is **GRANTED**.

**I.    Background**

On December 29, 2011, the plaintiffs, Cheryl Poole and Kenneth Poole, brought suit in the District Court of Fort Bend County, Texas against the diverse defendants, Ethicon, Johnson & Johnson Medical S.A. Inc., and Johnson & Johnson Sales and Logistics Company LLC for product liability claims. (*See* Pls.' Original Petition [Docket 1-1]). After being advised that they

---

[1] This case was transferred to this district from the Southern District of Texas by the Judicial Panel on Multidistrict Litigation. The plaintiffs filed the original motions [Dockets 21, 22] while the case was pending in the Southern District of Texas, and then re-filed the second set of motions [Dockets 35, 36] after the case was transferred to this district. The two motions to reconsider appear identical in substance, while the two motions for leave to file amended complaint differ. The responses and replies relate to the original motions filed in the Southern District of Texas.

might also have medical malpractice claims against Duc B. Le, M.D., Niraj Patel M.D., Fort Bend Ob/Gyn LLP, and Sugar Land Ob-Gyn Associates ("the nondiverse defendants"), the plaintiffs filed an amended petition on February 3, 2012. (*See* Pls.' Mot. to Recons. Mot. to Remand [Docket 21], at 2-3). On the same day, Ethicon removed the lawsuit to the United States District Court for the Southern District of Texas. (*Id.* at 3). Subsequently, the plaintiffs moved to remand to state court due to the presence of nondiverse parties. (*Id.*).

Judge Rosenthal denied the motion on March 13, 2012. She concluded the nondiverse defendants were fraudulently joined. (*Id.*). She reasoned that the plaintiffs failed to allege sufficient facts to support a medical malpractice claim against Dr. Le and Dr. Patel. (*See* Mem. & Op. Order [Docket 18], at 5). The only factual allegation against Dr. Le in the First Amended Original Petition was that he performed the mesh surgery. (*See id.* at 6.). There were no factual allegations that Dr. Le "breached any duty of care—or what that breach might be—or that his actions or inactions caused or contributed to Cheryl Poole's postsurgical problems." (*Id.*). In addition, the petition did not allege that Dr. Patel treated Mrs. Poole or was involved in her surgery. (*See id.*). Lacking any viable claims against the physicians, their employing facilities could not be vicariously liable. (*Id.*). On July 11, 2012, the Judicial Panel on Multidistrict Litigation transferred this action to this court for consolidated pretrial proceedings. (*See* Transfer Order [Docket 29], at 2).

## II.     Choice of Law

Under 28 U.S.C. § 1407, I am authorized to rule on pre-trial motions. In multidistrict litigation cases, the choice-of-law determination for pre-trial motions hinges upon whether federal or state law governs. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state

law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted); *see Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 568 n.4 (4th Cir. 2005) (applying Connecticut state law in transferred multidistrict litigation case based on diversity jurisdiction and citing to *In re Temporomandibular (TMJ) Joint Implants Prods. Liab. Litig.*, 97 F.3d at 1055); *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3866 (3d ed. 2009).

This case is based on diversity jurisdiction. Federal law thus controls procedural issues and state law controls substantive issues. *Dixon v. Edwards*, 290 F.3d 690, 710 (4th Cir. 2002). Because granting leave to amend is inherently procedural, and because a motion to reconsider arises under Federal Rule of Civil Procedure 54(b), and thus implicates federal procedural law, I will use the Fourth Circuit's standard for reconsideration. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469-70 (4th Cir. 1991) (approving Rule 54(b) as a procedural vehicle to reconsider a non-final order).

### III. Motion for Reconsideration

#### A. Legal Standard

Rule 54(b) of the Federal Rules of Civil Procedure governs reconsideration. *See id.*; *In re Digitek Prods. Liab. Litig.*, MDL No.1968, 2010 WL 5396377, at *1 n.2 (S.D. W. Va. Oct. 20, 2010); *Bragg v. Robertson*, 183 F.R.D. 494, 495-96 (S.D. W. Va. 1998) (stating that "the Court retains power to amend interlocutory orders to achieve complete justice"). Rule 54(b) states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a

3

>  judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). "Notwithstanding that precept, it is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly." *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, No. 3:09-cv-00481, 2010 WL 1404107, at *2 (S.D. W. Va. Mar. 30, 2010).

Additionally, although a "motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion," this district has been "guided by the general principles of Rules 59(e) and 60(b)" in determining whether a Rule 54(b) motion should be granted. *Shrewsbury v. Cyprus Kanawha Corp.*, 183 F.R.D. 492, 493 (S.D. W. Va. 1998). The Fourth Circuit has recognized three grounds for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Such motions "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id*. Finally, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id*. (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1, at 124 (2d ed. 1995)).

### B. Analysis of Motion for Reconsideration

Plaintiffs urge none of these grounds in support of reconsideration. They instead offer two substantive arguments. First, they assert Judge Rosenthal should have remanded the case based on the First Amended Original Petition. Second, they claim their proposed Second Amended Complaint—the subject of their motion for leave to file an amended complaint—cures

4

any defects that may have existed in the First Amended Original Petition.

The right to remove or remand must be "determined according to the plaintiffs' pleading at the time of the petition." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *see also Pinney v. Nokia, Inc.*, 402 F.3d 430, 443 (4th Cir. 2005) ("Because amendment occurred after removal, we look at the original complaints rather than the amended complaints."). The proposed complaint is therefore irrelevant to whether Judge Rosenthal correctly ruled upon the First Amended Original Petition.

After review of the briefs and the record, I **FIND** that the plaintiffs' motion for reconsideration fails for two reasons. First, the plaintiffs appear to raise arguments that could have been raised prior to the denial of their motion to remand. Second, even considering the merits of the plaintiffs' arguments, I agree with Judge Rosenthal that the plaintiffs did not state a claim against the nondiverse defendants in the First Amended Original Petition. There is no claim against Dr. Patel because the petition does not allege that he was involved in Mrs. Poole's surgery or treatment. In addition, although the petition states that Dr. Le failed to act as a reasonably prudent physician, the petition is devoid of facts that identify how Dr. Le breached that standard of care. Again, without a claim against the physicians, the facilities cannot be vicariously liable. Therefore, the plaintiffs' motion for reconsideration is **DENIED**.

### IV.   Motion for Leave to Amend

#### A.  Legal Standard

There is a dispute as to which standard governs the plaintiffs' motion: the liberal Rule 15 standard or the more exacting standard of 28 U.S.C. § 1447(e). The plaintiffs suggest that revising the factual allegations against the non-diverse defendants is akin "to amending a complaint to add a nondiverse defendant." (Pls.' Mot. for Leave to File Pls.' Second Am. Compl.

5

[Docket 36], at 4). Presumably, this amendment would trigger the § 1447(e) analysis. *See Mayes v. Rapoport*, 198 F.3d 457, 462 n.11 (4th Cir. 1999) (noting that post-removal amendment to complaint to add nondiverse defendant is analyzed under § 1447(e) rather than Rule 15(a)).

Under 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to *join additional defendants* whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (emphasis added). "[T]he statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." *Mayes*, 198 F.3d at 462.

According to its plain language, § 1447(e) applies where a nondiverse defendant is *joined* to an action. Here, the plaintiffs are not joining nondiverse defendants, but rather are revising their complaint. As the plaintiffs acknowledge, the "non-diverse Defendants are already present and . . . Plaintiffs are merely seeking to amend to make more specific allegations against them." (Pls.' Mot. for Leave to File Pls.' Second Am. Compl. [Docket 36], at 2). The plaintiffs cannot ignore this reality to trigger § 1447(e). *See, e.g.*, *Nelson v. Whirlpool Corp.*, 727 F. Supp. 2d 1294, 1300 (S.D. Ala. 2010) ("[W]hatever the result might have been had Clarke been dismissed, the reality is that Clarke has not been dismissed. The Court cannot simply pretend that Clarke has been dismissed in order to implicate Section 1447(e)."). Therefore, Rule 15 is the governing standard.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that, after time for amendment as a matter of course has passed, leave of court must be obtained to amend a pleading. The Rule provides that a court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has declared that this mandate is to be heeded." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation

marks omitted). "The law is well settled that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. Delay alone is an insufficient reason to deny leave to amend. Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Id*. (internal citations and quotation marks omitted).

### B. Analysis of Motion for Leave to Amend

The plaintiff seeks to add the allegation that Dr. Patel assisted in Mrs. Poole's surgery. In addition, the proposed complaint alleges that Dr. Le and Dr. Patel had a duty "to leave the pessary in long enough, to properly suture the mesh, and to inform Plaintiff of [their] lack of experience in performing the surgery in question." (Second Am. Compl. [Docket 36-15], at 15-16). The proposed complaint further alleges that they violated this duty. Finally, the plaintiff moves to add an additional count of lack of informed consent. The defendants do not articulate how the plaintiffs' amendment is unduly prejudicial. Assuming that issue uncontested, I will address the issues of bad faith and futility.

#### i. Bad Faith

The defendants claim the plaintiffs' amendment is in bad faith because it is motivated by a desire to destroy diversity jurisdiction. However, once removal jurisdiction properly attaches, a plaintiff cannot amend away jurisdiction. Wright & Miller, *supra*, § 3721 ("[O]nce a case has been properly removed, there is very little that a plaintiff can do that will defeat federal subject-matter jurisdiction and force a remand to state court."). For example, a post-removal amendment or stipulation reducing the amount in controversy below the jurisdictional amount will not destroy diversity jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938) ("[E]vents occurring subsequent to removal which reduce the amount recoverable,

whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached."). Likewise, "an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007).

The amount in controversy is required for diversity jurisdiction and the existence of a federal claim is necessary for federal question jurisdiction. After removal, when a plaintiff eliminates these conditions, federal jurisdiction is not lost. It follows that if a plaintiff seeks to amend a complaint to change the citizenship of a party, this post-removal amendment will not defeat jurisdiction. *Nelson*, 727 F. Supp. 2d at 1301 ("Since post-removal elimination of these essentials does not deprive the federal court of subject matter jurisdiction, it would be reasonable to extrapolate that post-removal elimination of complete diversity of citizenship likewise does not adversely impact subject matter jurisdiction."); *see Wis. Dept. of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (removal jurisdiction is sustained in despite of "a later event, say, the change in citizenship of a party, or a subsequent reduction of the amount at issue below jurisdictional levels, destroys previously existing jurisdiction"); *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987) ("[M]ost post-removal developments-amendment of pleadings to below jurisdictional amount or change in citizenship of a party-will not divest the court of jurisdiction but an addition of a nondiverse defendant will do so."); *S. Pac. Co. v. Haight*, 126 F.2d 900, 903 (9th Cir. 1942) ("[J]urisdiction over [a properly removed case] will not be defeated by later changes or developments in the suit, such as changes in citizenship, in parties, in the amount involved or in the cause of action pleaded."); Wright & Miller, *supra*, § 3723 ("[W]here a case has been properly removed, jurisdiction over it will not be defeated by later changes or developments in the suit, such as changes in citizenship . . . [or a] reduction in the amount in

controversy."). *See generally Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255-56 (4th Cir. 2002) (In a case originally filed in federal court, "a court determines the existence of diversity jurisdiction 'at the time the action is filed,' regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy.") (citing *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)). The exception to this general rule is § 1447(e), which would require remand if a nondiverse defendant is joined to the action. *Mayes*, 198 F.3d at 462; *Hensgens*, 833 F.2d at 1181. But as previously mentioned, that is not the case here.

Accordingly, I **FIND** that the plaintiffs' amendment, if granted, would not divest this court of jurisdiction. This result is in line with the rule that removal jurisdiction is determined by the pleadings filed at the time of removal. *Pullman Co.*, 305 U.S. at 537. There are two policies underlying this rule. First, this rule prevents a plaintiff from avoiding a fraudulent joinder analysis by amending the complaint before the court can make that determination. *See, e.g.*, *Nelson*, 727 F. Supp. 2d at 1304. If a post-removal amendment to cure fraudulent joinder were allowed, a plaintiff simply could wait after removal to allege a viable claim against a fraudulently joined defendant to force remand. *Id.* Second, if such post-removal amendments result in remand, "disposition of [jurisdiction] would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

Here, because the nondiverse defendants were improperly joined at the time of removal, their citizenship was ignored for purposes of jurisdiction. Thus, there was complete diversity and

removal jurisdiction properly attached. The plaintiffs' amendment would merely result in changing these defendants' citizenship from nothing to Texas. As previously mentioned, once there is proper removal jurisdiction, a subsequent change in citizenship will not defeat it. *Nelson*, 727 F. Supp. 2d at 1303-04 ("Because Clarke was fraudulently joined, its citizenship was ignored in determining the existence of complete diversity at the time of removal. Regardless of its actual citizenship, for diversity purposes Clarke is considered not to be a citizen of Alabama. The proposed amendment, if granted, would require the Court to consider Clarke to be a citizen of Alabama. But as noted above, a post-removal change in the citizenship of an existing party does not divest a court of jurisdiction. Because amendment would accomplish only a post-removal change in the citizenship of an existing party (from nothing to Alabama), it cannot divest the Court of subject matter jurisdiction."). Therefore, the plaintiffs' bad faith conduct, if any, will not be rewarded with a remand. As a result, I find the defendants' argument unpersuasive on this point.

    ii.   **Futility**

The defendants argue that the amendment would be futile because, contrary to the plaintiffs' intentions, it would not divest this court of jurisdiction. While the defendants are correct as a general matter, the plaintiffs' amendment would not be futile for the purpose of bolstering their allegations against the nondiverse defendants. In the Fourth Circuit, an amendment is futile if it would fail to survive a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

In the proposed complaint, the plaintiffs have sufficiently stated a claim for a medical malpractice against Dr. Patel and Dr. Le. In Texas, the elements of a medical malpractice claim are: "(1) the duty of the physician to act according to a certain standard; (2) a breach of that

standard of care; (3) an injury; and (4) a causal connection between the breach and the injury." *Silvas v. Ghiatas*, 954 S.W.2d 50, 52 (Tex. App. 1997).

A physician can be liable for malpractice if he or she breaches a duty that arises from a physician-patient relationship. *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 1995) ("[A] physician cannot be liable for malpractice unless the physician breaches a duty flowing from a physician-patient relationship."). "If there is no prior relationship between the physician and the patient, there must be some affirmative action on the part of the physician to treat the patient to create such a relationship." *Majzoub v. Appling*, 95 S.W.3d 432, 436 (Tex. App. 2002). Here, the proposed complaint alleges that Dr. Le, assisted by Dr. Patel, performed the mesh surgery on Mrs. Poole. The physicians' treatment of Mrs. Poole would be sufficient to create a physician-patient relationship and thus create a duty. *Cf. Stutes v. Samuelson*, 180 S.W.3d 750, 754-55 (Tex. App. 2005) (holding that no physician-patient relationship existed where doctor "did not enter the surgical field, did not touch the patient, did not scrub-in, was not in a position to direct a procedure, did not prepare a report, never spoke to the patient, and did not bill for his time").

In addition, in the proposed complaint, the plaintiffs allege facts identifying the standard of care and describe how the physicians breached this standard. Specifically, the plaintiffs allege the physicians breached the standard of care by failing "to leave the pessary in long enough, to properly suture the mesh, and to inform Plaintiff of [their] lack of experience in performing the surgery in question." (Second Am. Compl. [Docket 36-15], at 14-16). These specific acts or omissions, if true, would be sufficient to state the standard of care and its breach.

The proposed complaint also alleges that the physicians' negligence proximately caused Mrs. Poole's injuries and damages. Finally, the plaintiff alleges that the physicians were agents or employees of the facilities and were acting within the scope of these positions when they

treated Mrs. Poole. Because the physicians could be liable, so could the facilities. *See Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 684 (Tex. App. 2000) ("To establish a hospital's liability for an independent contractor's medical malpractice based on ostensible agency, a plaintiff must show (i) he or she had a reasonable belief the physician was the agent or employee of the hospital, (ii) such belief was generated by the hospital affirmatively holding out the physician as its agent or employee or knowingly permitting the physician to hold herself out as the hospital's agent or employee, and (iii) he or she justifiably relied on the representation of authority."); *Jeffcoat v. Phillips*, 534 S.W.2d 168, 172 (Tex. Civ. App. 1976) ("In general a hospital is liable under respondeat superior for injuries negligently inflicted by an employee of the hospital acting within the course and scope of his employment.").

As to the count for lack of informed consent, a plaintiff must show "negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." Tex. Civ. Pract. & Rem. Code Ann. § 74.01. In the proposed complaint, the plaintiffs allege that physicians failed to disclose their inexperience in performing mesh surgery or of the complications of the mesh, which would have influenced Mrs. Poole's decision to proceed with the surgery. Therefore, the plaintiffs have sufficiently stated a claim for informed consent. Because these allegations would be sufficient to survive a motion to dismiss, the plaintiffs' amendment is not futile. Accordingly, the plaintiffs' motion to amend is **GRANTED.**

V.     **Conclusion**

For the reasons stated above, it is **ORDERED** that the Plaintiffs' Motion to Reconsider Plaintiffs' Motion to Remand [Dockets 21, 35] is **DENIED** and Motion for Leave to File a Second Amended Complaint [Dockets 22, 36] is **GRANTED**. The court **DIRECTS** the Clerk to

send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:    November 25, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE